UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
JOSE R. GALLETTI,                                          :
                                                           :
                    Plaintiff,                             :
                                                           :       **DECISION AND ORDER**
          v.                                               :       13-CV-6641 (WFK)
                                                           :
CAROLYN W. COLVIN,                                         :
COMMISSIONER OF SOCIAL SECURITY,                           :
                                                           :
                    Defendant.                             :
-------------------------------------------------------------X

**WILLIAM F. KUNTZ, II, United States District Judge:**

Plaintiff Jose R. Galletti ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) alleging Carolyn W. Colvin, the Commissioner of Social Security (the "Commissioner"), improperly denied Plaintiff's request for Social Security Disability ("SSD") benefits. The Commissioner filed a motion for judgment on the pleadings requesting an order affirming the Commissioner's decision and dismissing the action. Plaintiff filed a cross-motion for judgment on the pleadings requesting that the Court vacate the Commissioner's decision and remand this action for additional administrative proceedings. For the reasons that follow, the Commissioner's motion is DENIED and Plaintiff's motion is GRANTED.

## BACKGROUND AND PROCEDURAL HISTORY

Plaintiff was born on September 21, 1969. *See* Dkt. 20 (Administrative Record) ("R."), at 46, 116. In his application to the Social Security Administration ("SSA") for SSD benefits, Plaintiff stated that he became unable to work due to a disabling condition beginning on November 30, 2010. *Id.* at 116, 119. Prior to his application for SSD benefits, Plaintiff worked as a police officer. *Id.* at 134. Plaintiff claimed he was disabled as a result of an injury to his right knee requiring surgery, an injury to his left knee, an injury to his right hand involving nerve damage, and arthritis. *Id.* at 48-52, 142. In a disability questionnaire completed on June 4, 2011, Plaintiff indicated: (1) he lives in a house with his family, (2) personal care causes him pain and takes time, (3) he cannot cook or hold or lift anything in his right hand, (4) he can do laundry and

—1—

cleaning, though he requires help in throwing out the garbage, (5) he is able to walk and drive short distances, and (6) he cannot stand, walk, or sit for long. *Id.* at 150, 151, 152-53, 153-54, 155-56, 156-57. Additionally, Plaintiff's back, left shoulder, and left knee were injured in a car accident on January 26, 2012. *Id.* at 37, 53-54.

Plaintiff filed an application for SSD benefits under Title II and XVIII of the Social Security Act (the "Act") on March 22, 2011. *Id.* at 32, 40. The claim was initially denied on October 27, 2011. *Id.* at 32, 69. Plaintiff thereafter requested a hearing before the Administrative Law Judge ("ALJ"), which was held on August 14, 2012 before ALJ Bruce MacDougall ("the ALJ"). *Id.* at 32, 46. Plaintiff was represented by counsel. *Id.* at 32, 46. At that hearing, Plaintiff reiterated the aforementioned complaints. *Id.* at 59, 65. On August 23, 2012, the ALJ issued a decision finding Plaintiff was not disabled. *Id.* at 29-40. The Appeals Counsel denied Plaintiff's request for review on September 25, 2013. *Id.* at 1-6. This denial became the Commissioner's final act.

## DISCUSSION

### I. Standard of Review

When a claimant challenges the SSA's denial of disability benefits, the Court's function is not to evaluate *de novo* whether the claimant is disabled, but rather to determine only "whether the correct legal standards were applied and whether substantial evidence supports the decision." *Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004), *amended on reh'g*, 416 F.3d 101 (2d Cir. 2005); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]"); *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009). Substantial evidence is "more than a mere scintilla"; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v.*

*Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks omitted) (citing *Consol. Edison Co. of N.Y., Inc. v. NLRB*, 305 U.S. 197, 229 (1938)); *Moran*, 569 F.3d at 112. The substantial evidence test applies not only to the Commissioner's factual findings, but also to inferences and conclusions of law to be drawn from those facts. *See Carballo ex rel. Cortes v. Apfel*, 34 F. Supp. 2d 208, 214 (S.D.N.Y. 1999) (Sweet, J.). In determining whether the record contains substantial evidence to support a denial of benefits, the reviewing court must examine the entire record, weighing the evidence on both sides to ensure that the claim "has been fairly evaluated." *See Brown v. Apfel*, 174 F.3d 59, 62 (2d Cir. 1999) (quoting *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983)).

It is the function of the SSA, not the federal district court, "to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983) (citing *Richardson*, 402 U.S. at 399); *see also Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998). Although the ALJ need not resolve every conflict in the record, "the crucial factors in any determination must be set forth with sufficient specificity to enable [the reviewing court] to decide whether the determination is supported by substantial evidence." *Calzada v. Asture*, 753 F. Supp. 2d 250, 268-269 (S.D.N.Y. 2010) (Sullivan, J.) (citing *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984)) (quotation marks omitted). To fulfill this burden, the ALJ must "adequately explain his reasoning in making the findings on which his ultimate decision rests" and must "address all pertinent evidence." *Kane v. Astrue*, 942 F. Supp. 2d 301, 305 (E.D.N.Y. 2013) (Kuntz, J.) (quoting *Calzada*, 753 F. Supp. 2d at 269). "[A]n ALJ's failure to acknowledge relevant evidence or to explain its implicit rejection is plain error." *Id.* (internal quotation marks and citations omitted). Remand is warranted when "there are gaps in the administrative record or the

ALJ has applied an improper legal standard." *Rosa v. Callahan*, 168 F.3d 72, 82-83 (2d Cir. 1999).

**II. Determination of Disability and Parties' Cross-Motions**

**A. Applicable Law**

For purposes of SSD benefits, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). The impairments in question must be of "such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. § 423(d)(2)(A).

To determine whether a claimant is disabled, the Commissioner must apply the five-step sequential process set forth in 20 C.F.R. § 404.1520. *See e.g.*, *Rosa*, 168 F.3d at 77. The claimant bears the burden of proving the first four steps, while the burden shifts to the Commissioner at the fifth step. *Id.* First, the Commissioner must determine whether claimant is engaging in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is not so engaged, the second step is to determine whether the claimant has a "severe medically determinable physical or mental impairment." 20 C.F.R. § 404.1520(a)(4)(ii). If the claimant has such an impairment, the third step is to determine whether the impairment or combination of impairments meets or equals one of the listings in Appendix 1 of the regulations. 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant's impairment does not match any of the listings, the fourth step is to determine whether the claimant's residual functional capacity ("RFC") allows the

claimant to perform past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant cannot perform past relevant work, the final step is to determine whether the claimant can perform another job based on his or her RFC, work experience, age, and education. 20 C.F.R. § 404.1520(a)(4)(v).

Furthermore, "[a]n ALJ is required to give controlling weight to the medical opinion of a claimant's treating physician when that opinion: (1) concerns the nature and severity of an impairment; (2) is well-supported by medically acceptable clinical and laboratory diagnostic techniques; and (3) is not inconsistent with other substantial evidence in the record." *Meadors v. Astrue*, 370 F. App'x 179, 182 (2d Cir. 2010) (internal citations omitted). In deciding what weight to accord medical opinions not given controlling weight, the ALJ must consider "(i) the frequency of the examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; and (iv) whether the opinion is from a specialist." *Drogo v. Colvin*, 13-CV-946, 2015 WL 4041732, at *7 (N.D.N.Y. July 1, 2015) (Suddaby, J.) (citing 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2)) (internal quotation marks omitted). Remand is appropriate where an ALJ fails to provide good reasons for the weight given to the treating physician's medical opinion. *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999).

**B. The ALJ's Decision**

On August 23, 2012, the ALJ issued his decision denying Plaintiff's application for SSD benefits. R. at 29-40. The ALJ followed the five-step procedure to evaluate Plaintiff's claim and found that: (1) Plaintiff had not engaged in substantial gainful activity since November 30, 2010, the alleged onset date; (2) Plaintiff had severe impairments of internal derangement of both knees, internal derangement of the left shoulder, internal derangement of the lumbar spine, and

—5—

residuals of a right fifth finger fracture; (3) Plaintiff did not have an impairment or combination of impairments that met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) Plaintiff had the RFC to perform the full range of "light work" as defined in 20 C.F.R. 404.1567(b)[1]; and (5) considering Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. *Id.* at 34-39.

In determining that Plaintiff had the RFC to perform light work, the ALJ considered Plaintiff's testimony, symptoms, and the medical evidence, including reports from Dr. Mitchell Goldstein, M.D. and Dr. Marc Parnes, M.D., Plaintiff's treating physicians, and Dr. Jerome Caiati, M.D., a consulting physician on behalf of the SSA. *Id.* at 35-36. Additionally, the ALJ considered the observations of investigators for the SSA. *Id.* at 37. Dr. Goldstein found that Plaintiff could stand or walk for less than two hours total, could sit for less than six hours total in an eight hour work day, could lift less than five pounds frequently, had marked restriction of the range of motion of the fingers of his right hand, would have difficulty concentrating on his work, and would require frequent breaks. *Id.* at 38. Dr. Parnes found that Plaintiff could stand or walk for less than two hours total, could sit for less than four hours total in an eight hour work day, could lift less than ten pounds occasionally and less than five pounds frequently, required frequent rests during the work day, would have difficulty concentrating on his work, would have difficulty functioning in a work setting due to his medication, and would require an average of two or more sick days off a month. *Id.* Dr. Caiati found that Plaintiff's ability to sit, stand, and walk were unrestricted. *Id.* at 36.

---

[1] Light work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds[,]" as well as -"a good deal of walking or standing[.]" 20 C.F.R. 404.1567(b).

The ALJ ultimately found that Plaintiff's statements about his own limitations and the assessments of Drs. Goldstein and Parnes were outweighed by the assessment of Dr. Caiati. *Id.* at 38. According to the ALJ, "the opinions of Dr. Parnes and Dr. Goldstein were not given great weight" because their opinions were "not fully supported by the objective medical evidence and [were] contradicted by the opinion of Dr. Caiati." *Id.* Dr. Caiati's opinion was given "significant weight and outweighed the opinions of Dr. Parnes and Dr. Goldstein" because it "was well supported by the objective medical evidence and was consistent with [Plaintiff's] activities of daily living as described." *Id.* Specifically, the ALJ cited the following descriptions of Plaintiff's "activities of daily living": (1) Plaintiff informed Dr. Caiati he could shower, bathe, and dress himself; (2) Plaintiff was observed by SSA investigators using his cell phone with his right hand and ambulating normally; (3) Plaintiff was further observed using his right hand to carry and manipulate small objects as needed; (4) Plaintiff could drive himself to some locations, and (5) Plaintiff temporarily returned to work on a light-duty basis after undergoing surgery on his right knee and right hand. *Id.* Accordingly, based on "the opinion of Dr. Caiati and the descriptions of [Plaintiff's] activities of daily living[,]" the ALJ concluded that Plaintiff could perform light work. *Id.* After finding jobs existed in significant numbers in the national economy that Plaintiff can perform given his age, education, work experience, and RFC, the ALJ concluded Plaintiff had not been under a disability as defined by the Act since November 30, 2010. *Id.* at 39. As a result, the ALJ found Plaintiff was not disabled since March 22, 2011, the date Plaintiff's SSD application was filed. *Id.* at 40.

## C. The Parties' Cross-Motions

On September 4, 2014, the parties filed cross-motions for judgment on the pleadings. Dkt. 15 ("Commissioner's Motion"); Dkt. 17 ("Plaintiff's Motion"); Dkt. 18 ("Commissioner's

Reply"); Dkt. 19 ("Plaintiff's Reply"). The Commissioner requests that the Court affirm the ALJ's decision because substantial evidence exists to support the ALJ's denial of SSD benefits. Commissioner's Motion at 19. Plaintiff requests that the Court vacate and remand the ALJ's decision because the ALJ improperly rejected the opinions of Plaintiff's treating physicians. Plaintiff's Motion at 21.

For the reasons set forth below, the Court finds that the ALJ's decision was not supported by substantial evidence, and accordingly REMANDS the case for further administrative proceedings.

### III. The ALJ Incorrectly Failed to Give Controlling Weight to the Medical Opinions of Drs. Goldstein and Parnes

To determine whether the ALJ's decision should be remanded for further administrative proceedings, the Court must examine whether substantial evidence exists to support the ALJ's RFC finding that Plaintiff can engage in light work.

Plaintiff argues the ALJ improperly failed to give the opinions of Drs. Goldstein and Parnes greater weight than that of Dr. Caiati. Drs. Goldstein and Parnes, Plaintiff argues, were Plaintiff's treating physicians and as such entitled to deference. Plaintiff's Motion at 21. Furthermore, Plaintiff argues that Drs. Goldstein and Parnes treated Plaintiff for over a year, reviewed all available diagnostic tests, performed clinical examinations on Plaintiff, and considered all of Plaintiff's impairments. *Id.* at 22. By contrast, Plaintiff argues, Dr. Caiati's review did not include MRIs of Plaintiff's knees, lumbar spine, and left shoulder, and did not consider injuries to Plaintiff's left knee or left shoulder because they had not yet occurred at the time of Dr. Caiati's examination. *Id.* at 23. Plaintiff notes that Dr. Caiati, unlike Dr. Goldstein, is not an orthopedic specialist. *Id.* at 23, Ex. A, Ex. B. Finally, Plaintiff argues that nothing

observed by the SSA investigators contradicts the findings of Drs. Goldstein and Parnes concerning Plaintiff's limitations. *Id.* at 24-25.

The Commissioner argues the ALJ correctly relied on Dr. Caiati's opinion to conclude Plaintiff is capable of performing a full range of light work. Commissioner's Motion at 20. The Commissioner does not dispute that Drs. Goldstein and Parnes were treating physicians, but argues the ALJ properly discounted their opinions because (1) these opinions were inconsistent with Dr. Caiati's opinion, (2) Dr. Goldstein's opinion was inconsistent with his own treatment notes indicating full motor strength in upper and lower extremities and normal sensation and neurological function, and (3) Dr. Parnes's treatment notes showed that Plaintiff's medication appeared to be helping him. *Id.* at 22. The Commissioner argues that the ALJ correctly dismissed Plaintiff's credibility in light of the SSA investigators' observations, Plaintiff's return to light duty after surgery on his right knee and right hand, and Plaintiff's ability to shower, bathe, and dress himself. *Id.* at 23.

As discussed above, "[a]n ALJ is required to give controlling weight to the medical opinion of a claimant's treating physician when that opinion: (1) concerns the nature and severity of an impairment; (2) is well-supported by medically acceptable clinical and laboratory diagnostic techniques; and (3) is not inconsistent with other substantial evidence in the record." *Meadors*, 370 F. App'x at 182 (2d Cir. 2010) (internal citations omitted). Here, the ALJ correctly noted that the determination of "disability" is a legal question for the Commissioner to decide and not a medical determination for doctors; as such, the conclusions of Drs. Goldstein and Parnes that Plaintiff is "disabled" should not be given weight. *See* R. at 38.

However, the opinions of Drs. Goldstein and Parnes regarding Plaintiff's ability to stand, walk, sit, and lift concern the nature and severity of Plaintiff's impairment. Dr. Goldstein's

opinion was based on his physical examinations of Plaintiff and MRIs performed on February 21, 2011, January 17, 2012, May 19, 2012, and July 2, 2012. *Id.* at 431-432. The February 21, 2011 MRI showed a possible new tear, a partial PCL tear, a meniscal cyst, and an impinging fat pad. R. at 431. Dr. Goldstein prescribed Orthovisc injections to the right knee, which Plaintiff "tolerated well." *Id.* The January 17, 2012 MRI did not result in any treatment or prescription. *Id.* at 432. The May 19, 2012 MRI, which occurred after Plaintiff was in a car accident on January 26, 2012, revealed a three to four millimeter partial tear in Plaintiff's left shoulder, mild supraspinatus tendonopathy without a tear, and AC joint hypertrophy. *Id.* Dr. Goldstein discussed Cortisone injections as a treatment. *Id.* The July 2, 2012 MRI revealed tearing of the medial meniscus in Plaintiff's left knee and a popliteal cyst, for which Dr. Goldstein recommended physical therapy and discussed surgery. *Id.* After considering these MRIs and after several appointments with Plaintiff, Dr. Goldstein concluded that Plaintiff could stand or walk for less than two hours, could sit less than six hours, could occasionally lift less than ten pounds, and could frequently lift less than five pounds. *Id.* at 421. Dr. Parnes reviewed the same MRIs, conducted his own personal examinations of Plaintiff, treated Plaintiff with physical therapy and prescribed fifteen milligrams of Mobic, and concluded that Plaintiff could stand and walk for less than two hours, could sit less than four hours, and required frequent periods of rest. *Id.* at 473-475. Dr. Goldstein's and Dr. Parnes's opinions are supported by their reviews of the MRIs and clinical observations of Plaintiff, which are medically acceptable diagnostic techniques.

Furthermore, contrary to the Commissioner's claims, the opinions of Drs. Goldstein and Parnes are not inconsistent with other substantial evidence in the record. The opinions of Drs. Goldstein and Parnes contradict the opinion of Dr. Caiati. However, Dr. Caiati's examination of

Plaintiff occurred on September 30, 2011, prior to Plaintiff's car accident and the 2012 MRIs considered by Drs. Goldstein and Parnes. *Id.* at 396. Furthermore, Dr. Caiati is a consultative examiner who examined Plaintiff once, and not Plaintiff's treating physician. *Id.* at 398. As such, an ALJ cannot refuse to give the opinions of Drs. Goldstein and Parnes controlling weight solely because they contradict Dr. Caiati. *See, e.g., Burgess v. Astrue*, 537 F.3d 117, 132 (2d Cir. 2008) (the opinion of a consulting physician who did not review diagnostic MRI evidence could not outweigh the treating physician's opinion); *Adesina v. Astrue*, 12-CV-3184, 2014 WL 5380938 at *9-10 (E.D.N.Y. Oct. 22, 2014) (Kuntz, J.) (opinions of consulting physicians should generally be given little weight because of the brevity and infrequency of the consulting physicians' examinations, especially where the consulting physician did not review diagnostic evidence). Neither is the conclusion that Plaintiff cannot sit, stand, walk, or lift frequently enough or for sufficiently long periods of time to do light work necessarily inconsistent with Dr. Goldstein's notes that Plaintiff has full motor strength in upper and lower extremities and normal sensation and neurological function. R. at 431-33, 436. Dr. Goldstein's notes and report indicate that Plaintiff's limitations are due to pain rather than lack of motor strength. *Id.* at 431-433. Similarly, while Dr. Parnes's notes indicate that Plaintiff is helped by medication, that does not contradict Dr. Parnes's statement that Plaintiff cannot sit, stand, walk, or lift sufficiently to perform light work. *Id.* at 474-475. A claimant's medication may work "to some degree," as Dr. Parnes stated, without rendering him able to work. *Id.* at 474.

Finally, none of Plaintiff's activities observed by the SSA investigators—driving short distances, walking short distances, walking with a seemingly normal gait, walking without an assistive device, using a cell phone with his right hand, carrying keys and papers in his right hand, and carrying bags of an unspecified size and weight in his right hand—contradict the

findings of Drs. Goldstein and Parnes that Plaintiff cannot stand or walk for more than two hours, cannot sit for more than six hours, and cannot frequently lift more than five pounds of weight. *Id.* at 406-407. "A claimant need not be an invalid to be found disabled." *Polis v. Astrue*, 09-CV-379, 2010 WL 2772505, at *11 (E.D.N.Y. July 13, 2010) (Block, J.) (internal citation and quotation marks omitted).

Overall, the evidence of record does not show that the medical opinions of Drs. Goldstein and Parnes are inconsistent with other substantial evidence in the record. Accordingly, the ALJ was incorrect to fail to give those medical opinions controlling weight, and the Court hereby REMANDS the case for further administrative proceedings consistent with this opinion.

## CONCLUSION

For the reasons stated herein, the Commissioner's motion for judgment on the pleadings, Dk. 15, is hereby DENIED, and Plaintiff's cross-motion for judgment on the pleadings, Dkt. 17, is hereby GRANTED. The Court hereby REMANDS this action to the Social Security Administration for further administrative proceedings consistent with this opinion.

**SO ORDERED.**

s/WFK

HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated: July 10, 2015
Brooklyn, New York